DEPARTMENT OF PUBLIC WELFARE, STATE OF INDIANA, Appellant (Defendant Below),

v.

Lula J. TYREE and Transamerica Insurance Company, Appellees (Plaintiffs below),

Jessica Lynn Fithian; Maxine Brown Aldridge, Guardian of the Person and Estate of Jessica Lynn Fithian; Maxine Brown Aldridge, Administratrix of the Estate of Linda K. Fithian, Deceased; Theodore C. Fithian; Deaconess Hospital; St. Joseph Hospital; Huntingburg Convalescent Center and Gibson General Hospital, Appellees (Defendants below).

No. 63S01–8906–CV–473.

Supreme Court of Indiana.

June 16, 1989.

Linley E. Pearson, Atty. Gen., Gordon E. White, Jr., Deputy Atty. Gen., Indianapolis, for appellant.

Russell E. Mahoney, Petersburg, for appellees.

PIVARNIK, Justice.

This cause comes to us on a petition to transfer from the First District Court of Appeals. Transfer is sought by the Estate of Linda K. Fithian, Deceased. The Court of Appeals summarized the facts as follows:

On February 9, 1984, Linda K. Fithian and her daughter, Jessica Lynn Fithian, were injured in an automobile accident caused by Lula J. Tyree. Linda K. Fithian ultimately died as a result of her injuries. On September 16, 1985, Tyree and her insurer, Transamerica Insurance Company (Transamerica), filed a com-

plaint seeking declaratory relief. The complaint averred that Tyree's automobile liability policy had limits for bodily injury or death of $25,000.00 per person and $50,000.00 per accident. The complaint also related that a settlement had been reached whereby Transamerica would pay Aldridge, who had been named guardian of Jessica and administratrix of the Estate, $50,000.00, to be divided evenly between Jessica and the Estate. In return Tyree and Transamerica would be released from all further claims. The prayer for relief asked the trial court to discharge Tyree and Transamerica from all liability upon making payment, require Aldridge to execute releases, and require the defendants to interplead and determine their respective rights to the settlement proceeds. Named as defendants were: Jessica Lynn Fithian; Aldridge, as both guardian of Jessica and administratrix of the Estate; Theodore C. Fithian, Linda's husband; DPW [Department of Public Welfare], which had paid for Linda's medical treatment; and several health-care providers. DPW was named as a defendant because it had filed a lien for $59,984.90, representing the amount DPW had paid for medical assistance on Linda Fithian's behalf. The Estate then filed a cross-claim against DPW and the health-care providers, alleging that none of the settlement proceeds were being recovered for medical, hospital, funeral, or burial expenses, but were for the support of Linda Fithian's two dependent children. The trial court ordered the settlement proceeds deposited in an interest-bearing account, and one-half of the funds were later paid to Jessica Fithian in settlement of her personal injury claim against Tyree and Transamerica. DPW did not object to this disbursement because it had not made any expenditures on Jessica Fithian's behalf.

Both DPW and the Estate moved for summary judgment. DPW claimed that its lien entitled it to all the funds in the account, and, because none of the proceeds could pass into the Estate until DPW's lien was satisfied, the statutes concerning claims against an estate were inapplicable. The Estate maintained that DPW's lien was unenforceable because Linda Fithian was survived by two dependent children and also because DPW had failed to deny the Estate's allegation in its cross-claim that none of the settlement proceeds were being sought for medical, hospital, funeral, or burial expenses. Following a hearing on the motions, the trial court granted summary judgment in favor of the Estate, prompting DPW to institute this appeal.

*Department of Public Welfare v. Tyree, et al.* (1987), Ind.App., 512 N.E.2d 1114, 1115–16.

The Court of Appeals reversed, and directed the trial court to enter judgment for DPW. It held that the personal representative was a mere trustee for those entitled to the damages and that she had an affirmative duty under the wrongful death statute to first pay the medical and hospital expenses. Appellee Maxine Brown Aldridge, as administratrix of the Estate, now seeks transfer. We grant transfer and order the opinion of the Court of Appeals vacated for the following reasons.

Although the Court of Appeals discusses the issues herein as a claim under the wrongful death statute, Ind.Code § 34–1–1–2, this action did not arise as a wrongful death claim. Transamerica Insurance Company, insurer of Plaintiff Lula J. Tyree, instituted this action as a "complaint for interpleader and declaratory relief." Transamerica had determined Tyree was at fault in the accident but full coverage of her insurance amounted to $50,000.00, an insufficient amount to cover the damages to Jessica Lynn Fithian, a minor daughter of Linda, and damages arising from the death of Linda K. Fithian, a twenty-eight (28) year-old woman with minor children surviving her. Transamerica claimed it would subject itself to multiple liability claims should it choose to pay the $50,000.00 to any of the named defendants, so it offered to pay the full $50,000.00 into court, relieving Transamerica of all further responsibility and requiring the defendants to interplead and settle between them-

selves their rights to money due and owing under a settlement agreement providing for such arrangements. Jessica Lynn Fithian received serious injuries in the accident and all parties agreed she was entitled to $25,000.00 of the settlement amount and the same was paid to her. The issues now presented arise from the disbursement of the $25,000.00 available for the death of Linda K. Fithian.

Aldridge, as personal representative of Linda K. Fithian, deceased, filed an Answer and a Cross–Complaint against all other defendants. Although the Cross–Complaint was not entitled an action for wrongful death, Aldridge alleged that Linda Fithian's minor children, Jessica Lynn Fithian and Stephanie Ann Ardizzone, were entitled to the money because of the "wrongful death" of their mother, Linda Fithian. We, of necessity, recognize the pleading not for what its title infers but for what relief it seeks. Aldridge's paragraphs of answer and cross-complaint sometimes claim the money should go directly to the minor children and at other times request the money be paid into the estate subject only to the lawful claims of creditors. The only authority in the law for one to seek and collect damages for the wrongful death of a decedent is found in the wrongful death statute, Ind.Code § 34–1–1–2, which provides for the personal representative to bring the action for damages as trustee for those entitled to them. It would seem proper, therefore, to consider the distribution of these funds pursuant to the provisions of that statute. We must also consider, however, the position of DPW, who had filed a lien for $59,984.90, representing the amount DPW had paid for medical assistance on Linda Fithian's behalf for health care provided for the very serious injuries resulting in her death. DPW filed an Answer claiming it was entitled to the full amount of $25,000.00 as reimbursement from liable third parties pursuant to Ind. Code § 12–1–7–24.6.

In her Cross–Complaint, Aldridge claimed the health care providers, Deaconess Hospital, Inc., Gibson General Hospital, St. Joseph Hospital and Huntingburg Convalescent Center, had no claim to any of the funds since DPW paid for their total services rendered. She claimed Linda Fithian's husband, Theodore C. Fithian, was not entitled to take any part of decedent's estate since he had abandoned her and the children long before any of these incidents occurred. She claimed DPW had no lien or any right to these funds pursuant to Ind. Code §§ 12–1–7–24.6 and 12–1–7–25, since Linda Fithian was twenty-eight years of age at the time of her death and owned no property, real or personal. Aldridge further claimed there was no showing that any of the money paid in by Transamerica was contemplated as payment for reasonable medical, hospital, funeral and burial expenses. The health care providers made no response to Aldridge's claim that they had been fully paid for their services and DPW stood on its claim of a lien pursuant to Ind.Code § 12–1–7–24.6. Aldridge then filed a Motion for Summary Judgment which the trial court properly granted against DPW.

■ DPW does not claim a right to recoup its payments by reason of the fact that it paid the claims of the health care providers and stepped in their shoes as the one furnishing health and hospital care. DPW expended the funds for aid to Linda Fithian pursuant to enabling statutes providing for such care. If DPW is to recoup any of its expenditures it must do so pursuant to provisions of those statutes. Ind. Code § 12–1–7–24.6, entitled "Medical Assistance; liens for amounts paid by department," sets forth the manner in which DPW is to be reimbursed from liable third parties, and provides, in pertinent part, as follows:

(a) Whenever:

(1) the department pays medical expenses for or on behalf of a person who has been injured or has suffered an illness or disease as a result of the negligence or act of another person; and

(2) the injured or diseased person asserts a claim against the other person for damages resulting from the injury, illness, or disease;

the department has a lien against the other person, to the extent of the amount paid by the department, on any recovery under the claim, whether by judgment, compromise, or settlement.

(b) Whenever:

(1) the department pays for medical expenses or renders medical services on behalf of a person who has been injured or has suffered an illness or disease; and

(2) that person asserts a claim against any insurer as a result of his injury, illness, or disease;

the department has a lien against the insurer, to the extent of the amount paid by the department, on any recovery from the insurer.

This statute clearly provides for the DPW to obtain a lien upon any recovery made by an injured or diseased person when such person has asserted a claim against the third party for damages resulting from the injury, illness, or disease, and further provides for the same lien when a claim is asserted against an insurer. The clear language of this statute is that a lien will obtain where the injured person is still living and has asserted the claim against the third party or an insurer. *Indiana Dept. of Public Welfare v. Guardianship of McIntyre* (1984), Ind.App., 471 N.E.2d 6; *Indiana Dept. of Public Welfare v. Larson* (1985), Ind.App., 486 N.E.2d 546. The Court of Appeals in both of these cases pointed out the clear intent and logic of the statute was to provide that public funds be repaid when they have been expended for an injured person's medical care and that person is later reimbursed from the wrongdoer or his insurer, since it would be unfair for the injured person to retain payment from both sources and not repay the public fund.

■ However, this is not the situation in the instant case. Linda Fithian did not survive her injuries and did not file an action against either the third party wrongdoer or the insurer, indeed, she had no opportunity to do so. These funds were not recovered from any of her efforts, but were obtained from the insurer for the benefit of survivors. Ind.Code § 12–1–7–24.6 makes no reference to this situation. Therefore, DPW has no lien pursuant to the statute. The only reference to recovery by the DPW after the recipient has died is found in other federal and state statutes. With respect to liens and recoveries, 42 U.S.C.A. § 1396a(a)(18) requires State plans for medical assistance to comply with 42 U.S.C.A. § 1396p, entitled "Liens, adjustments and recoveries, and transfers of assets," which provides, in pertinent part, as follows:

**(a) Imposition of lien against property of individual on account of medical assistance rendered to him under State plan**

(1) No lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan, except—

(A) pursuant to the judgment of a court on account of benefits incorrectly paid on behalf of such individual, or

(B) in the case of real property of an individual—

(i) who is an inpatient in a skilled nursing facility, intermediate care facility, or other medical institution, if such individual is required, as a condition of receiving services in such institution under the State plan, to spend for costs of medical care all but a minimal amount of his income required for personal needs, and

(ii) with respect to whom the State determines, after notice and opportunity for a hearing (in accordance with procedures established by the State), that he cannot reasonably be expected to be discharged from the medical institution and to return home,

except as provided in paragraph (2).

(2) No lien may be imposed under paragraph (1)(B) on such individual's home if—

(A) the spouse of such individual,

(B) such individual's child who is under 21, or (with respect to States eligible to participate in the State program established under subchapter XVI of this

chapter) is blind or permanently and totally disabled, or (with respect to States which are not eligible to participate in such program) is blind or disabled as defined in section 1382c of this title, or

(C) a sibling of such individual (who has an equity interest in such home and who was residing in such individual's home for a period of at least one year immediately before the date of the individual's admission to the medical institution),

is lawfully residing in such home.

(3) Any lien imposed with respect to an individual pursuant to paragraph (1)(B) shall dissolve upon that individual's discharge from the medical institution and return home.

**(b) Adjustment or recovery of medical assistance correctly paid under State plan**

(1) No adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made, except—

(A) in the case of an individual described in subsection (a)(1)(B) of this section, from his estate or upon sale of the property subject to a lien imposed on account of medical assistance paid on behalf of such individual, and

(B) in the case of any other individual who was 65 years of age or older when he received such assistance, from his estate.

(2) Any adjustment or recovery under paragraph (1) may be made only after the death of the individual's surviving spouse, if any, and only at a time—

(A) when he has no surviving child who is under age 21, or (with respect to States eligible to participate in the State program established under subchapter XVI of this chapter) is blind or permanently and totally disabled, or (with respect to States which are not eligible to participate in such program) is blind or disabled as defined in section 1382c of this title; ....

The Indiana counterpart to the federal statute is Ind.Code § 12–1–7–25, entitled "Medical assistance; death; claim against estate," which states as follows:

On the death of a recipient of medical assistance under the provisions of sections 14.9 through 53 of this chapter, the total amount of medical assistance paid after he becomes sixty-five (65) years of age shall be allowed as a preferred claim against the estate of such person in favor of the state, after funeral expenses for recipient and his or her spouse, not to exceed in each individual case three hundred fifty dollars ($350) and such expenses of the last illness of recipient and spouse as are authorized or paid by the state department, and after the expenses of administering the estate, including the attorney's fees approved by the court, have been paid. No claim shall be enforced against the following:

(a) Real estate of a recipient for the support, maintenance, or comfort of the surviving spouse, a dependent child under age twenty-one (21) or a dependent who is nonsupporting because of blindness or other disability.

(b) Personal property necessary for the support, maintenance, or comfort of the surviving spouse, a dependent child under age twenty-one (21) or a dependent who is nonsupporting because of blindness or other disability.

(c) Personal effects, ornaments, or keepsakes of the deceased.

■ These provisions of the state and federal statutes provide for the manner in which the State DPW will recover for funds expended. The federal statute clearly provides that no adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made except: (A) from his estate or upon sale of the property subject to a lien imposed on account of medical assistance paid on behalf of such an individual; or (B) from the estate of any other individual who was sixty-five years of age or older when he received such assistance. 42 U.S.C.A. § 1396p(b)(1)(A) and (B). Linda Fithian had no property, real or personal, in her estate to which any lien for medical assistance could attach for disbursement of

these funds. In fact, the State has filed no claim against her estate on behalf of DPW. The Indiana statute, Ind.Code § 12–1–7–25, also provides for DPW to have a preferred claim against the estate of the person receiving the aid but further provides no claim shall be enforced against real or personal property where there is a surviving dependent child. This section does not apply in the instant case because there is no real or personal property in Linda Fithian's estate, but even if there were, such property would be exempt because Linda Fithian left two surviving children under twenty-one (21) years of age.

Clearly, any amounts to be recouped by the DPW for medicaid services can come only from property in the recipient decedent's estate subject to the protection of surviving minor children. These latter sections provide for recovery by DPW after the recipient's death. Ind.Code § 12–1–7–24.6 does not. It applies only when the recipient lives and recovers the funds. Since that did not happen here, the trial court properly entered summary judgment.

The trial court is affirmed.

SHEPARD, C.J., and GIVAN and DICKSON, JJ., concur.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

As pointed out in the majority opinion, the legal basis for the cross-complaint of the interpleaded personal representative is the claim of the decedent which survives her death by reason of the wrongful death statute. I.C. 34–1–1–2; Ind.R.Tr.P. 22. The judgment of the court for the interpleaded personal representative should be governed by the distribution plan required by the wrongful death statute and treated the same as though the case had been initially filed as a wrongful death claim by the personal representative. The fact that a claim is brought by a party after being interpleaded does not alter the legal basis for such claim. The nature of a wrongful death judgment is such that it imposes upon the personal representative a duty to distribute damages in accordance with the wrongful death statute. According to I.C. 34–1–1–2, damages go first to medical, hospital, funeral and burial with any remainder to surviving dependents. I agree with the Court of Appeals that such damages do not become a part of the estate of the decedent within the meaning of I.C. 12–1–7–25, restricting liens of the welfare department. The welfare department is therefore entitled to recover the full value of its lien from the settlement proceeds less statutorily required attorney fees and the department's pro rata share of costs.